# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ODELL EWING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24CV847 |
| | ) | |
| LT. III TIMOTHY VIGUS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants' Motion to Dismiss. (Docket Entry 10.) For the following reasons, the undersigned recommends that the Motion should be granted in part and denied in part as stated herein.

## I. BACKGROUND

Plaintiff, a *pro se* prisoner who at the time of filing was housed in Scotland Correctional Institute ("SCI"), initiated this action on October 7, 2024, (Complaint ("Compl."), Docket Entry 2), and was permitted to proceed *in forma pauperis*. (Docket Entry 3; *see also* Docket Entry 1.) Plaintiff filed the Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Eighth Amendment rights by Defendants "Lieutenant III Timothy Vigus" ("Vigus") and "Unit Manager Mrs. Jernigan" ("Jernigan").[1] (Compl. at 1-3.) Plaintiff brings an Eighth-

---

[1] Plaintiff listed the names of one Defendant incorrectly. (*See* Docket Entry 11 at 2 (stating that Defendant Valris Brown was incorrectly named as "Unit Manager Mrs. Jernigan").)

Amendment conditions-of-confinement claim and an Eighth-Amendment excessive-force claim against Defendants in their official and individual capacities. (*See id.* at 3, 7.)

Plaintiff alleges that on April 4, 2024, Defendants subjected him to "excessive force and cruel and unusual punishment" by pepper spraying him "undeservingly" and then transported him "to isolated confinement to hazardous living conditions." (*Id.* at 4, 13.) Plaintiff claims that after Vigus pepper sprayed him, Vigus "maliciously waited 15 minutes or more until Plaintiff was on the verge of passing out" before decontaminating him. (*Id.* at 14.)

Plaintiff described his conditions during isolated confinement as "filthy" and alleged several problems in his cell including a moldy toilet, a sink that runs continuously but has no water pressure, walls stained with dirt, unfilled work orders, no cell inspection, and no emergency call button. (*See id.*) He alleges that "a lot of [his] property was lost" after being moved into isolated confinement. (*See id.* at 19.) Plaintiff further alleges that he did not receive meals for 16 hours because Vigus "refused" to alert the next shift that the Plaintiff had not eaten, and that on April 12, 2024, Vigus "fabricated a story of being spit at" to extend Plaintiff's stay in isolated confinement. (*See id.* at 13-14, 19.) He alleges the extended stay in isolated confinement was "a way to make me suffer." (*See id.* at 14) Plaintiff states the motivations for "fabricating" the story stem from Vigus's "malice" and efforts "corrupting the minds of employees under his rank." (*See id.* at 13, 19.) He alleges that as a result of the write-up, he lost his minimum custody level and was assigned to a level where inmates are "more violent and dangerous." (*Id.* at 14) Plaintiff alleges that these increased dangers made him "suffer[] the fear of death." (*Id.* at 16.)

Plaintiff further alleges that during a separate stay in restricted housing beginning September 4, 2024, Jernigan was aware of the hazardous living conditions and that she is

2

"responsible for the happens [sic] that occur on the unit." (*Id.* at 15.) Plaintiff also alleges she is responsible for training other SCI employees of "what is law by policy." (*Id.*) Plaintiff alleges that as a result of Jernigan's conduct, he was made to use the same bedsheets and towel for "a month straight," that chemicals to clean the cell were withheld from him, and that he was disallowed shaves and haircuts. (*See id.*) Plaintiff also alleges that he "made known and visible" to Jernigan the problems with his living conditions. (*Id.*) He further alleges that despite making Jernigan aware of these problems, nothing was done to address his concerns about his living conditions, which remained the same over a period exceeding one month. (*See id.*)

Plaintiff alleges that the conduct of Defendants created injuries including: "pain skin soarness [sic], emotional agony, penis blistered, burn sensation while urinating, blisters inside mouth, tramatized [sic], shortness of breath, and suffered fear of death." (*Id.* at 16.) Plaintiff seeks monetary damages of $100,000 from each Defendant, "[i]njunction that policy be enforced on living conditions, and anger management course be giving [sic] to[ ]Vigus." (*Id.*) Plaintiff states that he filed a grievance, and that he appealed the investigation's findings of no wrongdoing by staff members. (*See id.* 7.) Plaintiff filed a copy of the grievance, the results of the investigation, and a North Carolina Department of Adult Corrections ("NCDAC") Offense and Disciplinary Report as attachments to his Complaint. (*See id.* 18-22.)

On February 18, 2025, Defendants filed the Motion to Dismiss (Docket Entry 10) requesting that Plaintiff's official-capacity claims and Plaintiff's conditions-of-confinement claims be dismissed with prejudice. (Docket Entry 10 at 1.) Defendants filed a Memorandum in Support of said Motion. (Docket Entry 11.) Plaintiff did not file a response.

3

On February 19, 2025, a "*Roseboro* Letter"[2] was sent to Plaintiff at the address on file with the Court (at Granville Correctional Institute), informing Plaintiff that a dispositive motion had been filed in the instant action and advising him of the consequences of failing to respond. (Docket Entry 12.) On March 3, 2025, the "*Roseboro* Letter" was returned to the Court and was marked undeliverable, and indicated that Plaintiff has been released from prison on January 9, 2025. (Docket Entry 14.)

## II. DISCUSSION

### a. Relevant Legal Standards

#### i. Uncontested Motion to Dismiss

Plaintiff's "failure to file a response [to Defendants' motion to dismiss or move for a time extension] within the time required by [this Court's Local Rules]" means that "the motion will be considered and decided as an uncontested motion and ordinarily will be granted without further notice." (M.D.N.C L.R. 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.,* No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing other authorities that support proposition that a failure to respond to arguments concedes those arguments). "Plaintiff's status as a *pro se* litigant does not excuse his inaction." *Stephens v. Bullard*, No. 1:21CV54, 2022 WL2160243 at *1 (M.D.N.C. Jun. 15, 2022) (unpublished). Nevertheless, "the Court's duty does not end when a *pro se* party fails to respond." *Leguia v. Moynihan*, No. 3:18CV00503MOCDSC, 2019 WL 464971, at *2 (W.D.N.C. Feb. 6, 2019) (unpublished). Thus, this Court will consider the merits of Defendants' motion.

---

[2] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) advises *pro se* plaintiffs of their right to file responses to dispositive motions filed by defendants.

4

## ii. Rule 12(b)(6)

To consider a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") requires determining whether the complaint is legally and factually sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Complaints that are sufficient to survive a motion to dismiss under Rule 12(6)(b) "must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S at 570). Plaintiffs plead plausible claims when the claims contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

When evaluating a Rule 12(b)(6) motion, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff" while excluding "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Under this standard, a plaintiff must state claims articulating facts that, when accepted as true, demonstrate a plausible entitlement to relief. *See Twombly* 550 U.S at 557; *see also Iqbal*, 556 U.S. at 678.

## iii. *Pro Se* Pleading

*Pro se* complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers in assessing their sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In the context of civil rights claims liberal construction of a *pro se* plaintiff's

pleadings and documents is especially appropriate. *Moody-Williams v. LipoScience*, 953 F. Supp. 2d 677, 680 (E.D.N.C. 2013) (citing *Brown v. North Carolina Dept. of Corr.,* 612 F.3d 720, 722 (4th Cir. 2010). This liberal construction "does not transform the court into an advocate. Only those questions which are squarely presented to the court may properly be addressed." *Weller v. Dep't of Soc. Services for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990).

### iv. **In Forma Pauperis**

The Prison Litigation Reform Act of 1996 ("PLRA") creates mandatory provisions that define the degree and scope of initial review for complaints filed *in forma pauperis*. 28 U.S.C. § 1915; *see also Crawford-El v. Britton*, 523 U.S. 574, 596-97 (1998) (discussing the PLRA). The "three strike" provision of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). "A dismissal of a suit for failure to state a claim counts as a strike, whether or not with prejudice." *Lomax v. Ortiz-Marquez*, 590 U.S. 595, 603 (2020). A summary judgment dismissal of a claim that "states on its face that the dismissed action was frivolous, malicious, or failed to state a claim counts as a strike for the purposes of the PLRA's three strike provision." *Blakely v. Wards*, 738 F.3d 607, 613 (4th Cir. 2013); *Jacobs v. Carr*, 675 F. Appx. 383, 384 (4th Cir. 2017).[3] Under the *Blakely* standard "most summary judgment dismissals likely would not qualify

---

[3] In order to count as a strike, the language in the summary judgment dismissal must explicitly state that the dismissal was for "failure to state a claim." *See generally Goulette v. Lassiter*, No. 5:18CV138FDW, 2019 WL 570772, at n.3 (W.D.N.C. Feb. 12, 2019); *see also Morales v. White*, No. 5:16CV216FDW, 2017 WL 489430, at *2 (W.D.N.C. Feb. 6, 2017).

as Section 1915(g) strikes because at that point, frivolousness, maliciousness, and failure to state a claim are not addressed." *Blakely*, 738 F.3d at 614.

Furthermore, dismissal of a complaint for "failure to exhaust administrative remedies does not qualify as a strike for purposes of the PLRA." *Green v. Young*, 454 F.3d 405, 410 (4th Cir. 2006). Habeas corpus actions also do not qualify as a strike since they are not "civil actions," which are the only type of actions to which the PLRA applies. *See O'Brien v. Moore*, 395 F.3d 499, 506 (4th Cir. 2005) (citing *Smith v. Angelone*, 111 F.3d 1126 (4th Cir. 1997); *see also* 28 U.S.C. § 1915(a)(2).

### v. Official Capacity Claims and Eleventh Amendment Immunity

The Eleventh Amendment provides States with sovereign immunity against actions in federal court by individuals unless the State has consented to suit or unless Congress has lawfully abrogated said immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003); *see also* U.S. Const. amend. XI. This immunity extends to actions against a State's departments, institutions, and agencies. *See Lilly v. Carter*, No. 1:16Cv400, 2017 WL 3017704 at *5 (M.D.N.C. Jul. 14, 2017) (unpublished). Lawsuits against state officials acting in their official capacity are not considered lawsuits against "persons" but are instead considered lawsuits against the official's office, operating no differently than a suit against a State itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

In North Carolina "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Lilly,* 2017 WL 3017704, at *5 (citing *Green v. Kearney*, 203 N.C. App. 260, 269, 690 S.E.2d 755, 762 (2010). Essentially, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473

U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55) (internal quotation marks omitted). Following this reasoning, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

### vi. Conditions of Confinement

Claims by prisoners against prison officials challenging their conditions of confinement fall under the Eighth Amendment. *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (citations omitted). The Eighth Amendment requires that prison officials "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To the extent that such conditions [in prison] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The constitutional limit on prison conditions is that they do not violate contemporary standards of decency or create "the unnecessary and wanton infliction of pain." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations and citations omitted).

Eighth Amendment conditions-of-confinement claims are evaluated by a two-part test. *Porter*, 923 F.3d at 955. The first part requires that "the deprivation alleged must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. The deprivation must be one that puts the inmate "under conditions posing a substantial risk of serious harm," the kind of conditions that deny the inmate "the minimal civilized measure of life's necessities." *Id.*; *see also Rhodes*, 452 U.S. at 347. The second part requires that prison officials "possessed a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297. "That state of mind is one of 'deliberate indifference' to inmate health or safety."

8

*Farmer,* 511 U.S. at 834 (citations omitted). A claim of deliberate indifference requires "that the official in question subjectively recognized a substantial risk of harm" and that "the official actually *must have* recognized that his actions were insufficient." *Parish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citing *Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001)) (emphasis in original). A medical need serious enough to give rise to a constitutional claim must place the inmate at a substantial risk of harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer*, 511 U.S. at 832-35.

### vii. Excessive Force

In addition to requiring humane conditions of confinement, the Eighth Amendment forbids "the unnecessary and wanton infliction of pain." *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (citations omitted). In the context where force is used in the prison setting to resolve a disturbance, the core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline[,] or maliciously and sadistically for the purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 321-21 (1986). The nature of the force applied, not the extent of the injury, is the focus of the inquiry. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

An inmate's Eighth-Amendment excessive-force claim involves both an objective and subjective component. *See Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The objective standard requires a plaintiff to establish that the force used was "non-trivial," *Wilkins*, 559 U.S. at 39, or that the force exceeded the "*de minimis*" level of physical force excluded from constitutional recognition. *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). The subjective

9

Case 1:24-cv-00847-LCB-JLW   Document 15   Filed 05/30/25   Page 9 of 20

*Farmer,* 511 U.S. at 834 (citations omitted). A claim of deliberate indifference requires "that the official in question subjectively recognized a substantial risk of harm" and that "the official actually *must have* recognized that his actions were insufficient." *Parish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citing *Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001)) (emphasis in original). A medical need serious enough to give rise to a constitutional claim must place the inmate at a substantial risk of harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *Farmer*, 511 U.S. at 832-35.

### vii. Excessive Force

In addition to requiring humane conditions of confinement, the Eighth Amendment forbids "the unnecessary and wanton infliction of pain." *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (citations omitted). In the context where force is used in the prison setting to resolve a disturbance, the core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline[,] or maliciously and sadistically for the purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 321-21 (1986). The nature of the force applied, not the extent of the injury, is the focus of the inquiry. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

An inmate's Eighth-Amendment excessive-force claim involves both an objective and subjective component. *See Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The objective standard requires a plaintiff to establish that the force used was "non-trivial," *Wilkins*, 559 U.S. at 39, or that the force exceeded the "*de minimis*" level of physical force excluded from constitutional recognition. *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). The subjective

component requires a plaintiff to establish that a defendant "acted with a sufficiently culpable state of mind." *Brooks*, 924 F.3d at 112 (citation omitted). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (citation omitted).

The Fourth Circuit has repeatedly held that an allegation that a prison official deployed pepper spray on a docile prisoner stated a sufficient Eighth-Amendment excessive-force claim. *See Iko*, 535 F.3d at 239-40 (4th Cir. 2008); *Boone v. Stallings*, 583 Fed. Appx. 174, 176 (4th Cir. 2014) ("[o]ur precedent establishes that the use of pepper spray on a docile prisoner could qualify as excessive force"); *see also Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) ("it is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain"). The failure to properly decontaminate a prisoner can also qualify as excessive force. *Iko*, 77 F.3d at 243; *see also Grady v. Smith*, No. 1:20cv54, 2023 WL 130802, at *17 (M.D.N.C. Jan. 9, 2023).[4] "A correctional officer uses excessive force if he approaches a prisoner and, without any provocation by the prisoner aside from verbal taunts, sprays pepper spray into prisoner's face." *Bey v. Murray*, No. 5:17-CV-00108-FDW, 2019 WL 3955399, at *8 (W.D.N.C. Aug. 21, 2019) (unpublished) (citing *Boone v. Stallings*, 583 Fed. App'x 174, 176 (4th Cir. 2014)). But pepper spray "is not per se a cruel

---

[4] Courts frequently assess decontamination-related Eighth-Amendment claims under the "deliberate indifference" rather than "excessive force" classification, *see, e.g., Moskos*, 24 F.4th at 293-94, 297-98; *Duncan v. McKenzie*, No. CV 15-736, 2016 WL 1597103, at *5-8 (D. Md. Apr. 20, 2016) (analyzing allegations regarding spraying of pepper spray under excessive force standards and allegations regarding decontamination under deliberate indifference standards), *aff'd*, 670 F. App'x 119 (4th Cir. 2016), although they have also considered them under the "excessive force" classification, *see, e.g., Mann v. Failey*, 578 F. App'x 267, 271-74 (4th Cir. 2014); regardless, the determinative question remains the same: did the defendants inflict "cruel and unusual punishment[,]" U.S. Const. amend. VIII, on the plaintiff, *see Iko*, 535 F.3d at 238. *Anderson-Bey v. Graham*, No. 1:22CV798, 2024 WL 2784876, at *11 n.11 (M.D.N.C. May 30, 2024), *report and recommendation adopted*, No. 1:22CV798, 2024 WL 3203255 (M.D.N.C. June 27, 2024).

10

and unusual punishment." *Grady*, 2023 WL 130802, at *18 (citation omitted). Officers may use pepper spray in limited quantities "to control a recalcitrant inmate" without violating the Eighth Amendment. *Williams*, 773 F.3d at 763.

### viii. Injunctive Relief

A party seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[5]

Moreover, any request for injunctive relief must describe in detail the acts to be restrained or required. Fed. R. Civ. P. 65(d)(1)(C); *Hum. Rts. Def. Ctr. v. Ishee*, 726 F. Supp. 3d 482, 505 (E.D.N.C. 2024). These "are not mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Thus, injunctive relief must state in clear and specific terms its operation upon the enjoined party. *See, e.g., Wudi Indus. (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 189-90 (4th Cir. 2023); *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 459 (4th Cir. 2000).

---

[5] The original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). However, the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345-47, stating the facts and articulating the standard for issuance of a preliminary injunction, before remanding it to the district court for consideration in light of *Citizens United*. *See The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 607 F.3d 355 (4th Cir. 2010).

11

### b. **Defendants' Motion to Dismiss**

In Defendants' Motion to Dismiss, they argue that Plaintiff's Complaint should be dismissed for three reasons. (Docket Entry 11 at 1.) First, they argue that Plaintiff violated the PLRA's three-strike rule and that he should not be permitted to proceed in this action without paying the filing fees and other required court costs. (*Id.*) Second, they argue that Plaintiff's official-capacity claims are precluded by the Eleventh Amendment. (*Id.*) Third, they argue that the Complaint fails to sufficiently allege a conditions-of-confinement claim. (*Id.*)

### *Plaintiff is not barred by the PLRA from proceeding* in forma pauperis *in this action.*

Defendants argue that Plaintiff has accrued five strikes under 28 U.S.C. § 1915(g), thus barring him from filing the instant action *in forma pauperis*.

The first case that Defendants argue qualifies as a strike is *Ewing v. State of North Carolina*, No. 5:10HC02162D (E.D.N.C. May 24, 2011) ("the First Case"). (Docket Entry 11 at 5.)[6] This action was a habeas corpus petition, not a civil action (*see id.*), thus, it cannot qualify as a strike. *See O'Brien*, 395 F.3d at 506. Additionally, this case was dismissed for a failure to exhaust administrative remedies (Docket Entry 11 at 5); such a dismissal cannot qualify as a strike. *See generally Young*, 454 F.3d at 110. Therefore, the First Case does not qualify as a strike.

The second case that Defendants argue qualifies as a strike under the PLRA is *Ewing v. Silvious, et al.*, No. 5:11CV00064F (E.D.N.C. Sep. 30, 2014) ("the Second Case"). There, Plaintiff's action pursuant to Section 1983 for a Fourth-Amendment excessive-force violation was dismissed after Defendants filed a summary judgment motion because "Plaintiff's relatively

---

[6] Defendants' Motion to Dismiss cites to no authority that supports their argument that habeas corpus actions could count as strikes under the PLRA.

12

minor injuries are not indicative of a Fourth Amendment violation." (*See id.*, Docket Entry 114 at 13.) The Court's order in the Second Case does not contain explicit language noting that Ewing's action was frivolous, malicious, or that the action failed to state a claim. (*See id.*) Therefore, the Second Case does not meet the *Blakely* standard and does not qualify as a strike.

The third case that Defendants argue qualifies as a strike under the PLRA is *Ewing v. Cutler*, No. 5:11CT03129F (E.D.N.C. October 28, 2011) ("the Third Case"). Plaintiff's complaint in that case was deemed "fatally flawed" and was characterized as "a frivolous § 1983 suit against his former attorney." (*See id.*, Docket Entry 11 at 5.) The claim's dismissal on the grounds that it was "frivolous" means that the Third Case does qualify as a strike.

The fourth case that Defendants argue qualifies as a strike under the PLRA is *Ewing v. State of North Carolina*, No. 5:11HC02173D (E.D.N.C. November 1, 2014) ("the Fourth Case"). This case was a habeas corpus petition, and the summary judgment motion was related to this petition. (*See id.*, Docket Entry 33 at 1.) Again, habeas corpus petitions are not considered civil actions for the purposes of 28 U.S.C. 1915(g). *O'Brien*, 395 F.3d at 506. Therefore, the Fourth Case does not qualify as a strike.

The fifth matter that Defendants argue qualifies as a strike under the PLRA is *Ewing v. Unknown Defendants*, 5:16MC00003BO (E.D.N.C. December 7, 2016) ("the Fifth Matter"). This matter was closed because Plaintiff's filings were "insufficient to initiate a case and do not present administrative matters requiring resolution by the court."[7] (*See id.*, Docket Entry 3 at 1.) Because this did not commence a civil action, there was no proceeding established to

---

[7] Defendants' Motion to Dismiss cite to no authority that supports their argument that Ewing's filing should qualify as a strike under the PLRA.

13

which the PLRA could apply. The order acknowledged this by choosing to send Plaintiff "the court's *pro se* complaint package, which contains case opening materials necessary to initiate a lawsuit." (*Id.* Docket Entry 3 at 2.) Therefore, this matter does not qualify as a strike against the plaintiff under the PLRA.

Ultimately, then, since the Plaintiff does not have three strikes, he is not barred from proceeding *in forma pauperis* by the PLRA. 28 U.S.C. § 1915(g).

### Plaintiff's Official Capacity claims should be dismissed under the Eleventh Amendment.

Plaintiff sues Defendants in their individual and official capacities. (Compl. at 13.) Defendants argue that this is improper because they have immunity under the Eleventh Amendment, and there has been no waiver of immunity granted to allow Plaintiff to bring his case. (*See* Docket Entry 11 at 7.) Both Vigus and Jernigan are being sued for their actions as employees of SCI, which is a facility operated by the NCDAC. (Compl. at 2.) Thus, Defendants are officers of the State of North Carolina, and Plaintiff's suit operates as a suit against the offices of Defendants. *Will*, 491 U.S. at 71. This suit operates functionally as a suit against the State of North Carolina itself. *Lilly*, 2017 WL 3017704, at *5. Plaintiff has not specifically alleged that North Carolina has waived its sovereign immunity or that Congress lawfully abrogated North Carolina's immunity. Nor is there any such indication elsewhere in the record. In their official capacities, Defendants are not considered persons, as they represent the State of North Carolina; thus, under the Eleventh Amendment they cannot be held liable as proper defendants in a Section 1983 action. *Will*, 491 U.S. at 71. Therefore, Plaintiff's official capacity claims against defendants should be dismissed.

14

### *The Complaint fails to sufficiently allege the elements of a conditions-of-confinement claim.*

Plaintiff's conditions-of-confinement claim is based on the list of alleged housing conditions that he alleges caused him to suffer pain, skin soreness, blisters to his mouth and penis, shortness of breath, a burning sensation when urinating, emotional trauma, and agony. (*See* Compl. at 16.) Plaintiff does not allege that, outside of one incident in which he did not receive food for 16 hours, that he was deprived of adequate food for the duration of his confinement. (*Id.* at 13.) Nor has Plaintiff alleged that he did not have adequate clothing, shelter, or that he sought and was denied medical care.

Plaintiff's allegation regarding the deprivation of shaves and haircuts is not a sufficiently serious injury or extreme deprivation. *See McCrae v. Rush*, No. 1:24CV368, 2025 WL 1220301, at *9 (M.D.N.C. Apr. 28, 2025) (citing *Sears v. Washington*, 655 F. Supp. 3d 624, 627 (E.D. Mich. 2023) (collecting cases)). Nor is Plaintiff's allegation that he did not receive food for 16 hours. *Jacoby v. Lanier*, No. 2:19-CV-1067-MHT-CSC, 2022 WL 18356583, at *18 (M.D. Ala. Oct. 24, 2022) (unpublished) ("deprivations or delay of food or a toilet, for short periods of time, do not violate the Eighth Amendment") (collecting cases), *report and recommendation adopted*, No. 2:19CV1067-MHT, 2023 WL 205147 (M.D. Ala. Jan. 17, 2023). Neither are Plaintiff's allegations challenging Vigus's extension of his placement in restrictive housing. *McCrae*, 2025 WL 1220301, at *9 (citing *Skinner v. Moyer,* No. CV TDC-17-3262, 2020 WL 1065740, at *9 (D. Md. Mar. 4, 2020) (unpublished) (where plaintiff failed to show an Eighth Amendment violation because he failed to show injuries suffered from specific periods of segregation). Plaintiff has failed to allege facts that plausibly show Vigus's decision regarding Plaintiff's placement in restrictive housing did not fall within "the broad discretion

15

Case 1:24-cv-00847-LCB-JLW   Document 15   Filed 05/30/25   Page 15 of 20

given to prison administrators to manage prisons safely and effectively." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

Plaintiff's allegations regarding mold, unclean linen and clothes, and his overall housing conditions also do not rise to the level of constitutional violations. *See Dale v. Jurdegan*, No. 1:23CV282, 2025 WL 755835, at *8 (M.D.N.C. Mar. 10, 2025) (collecting cases). Since the alleged conditions were temporary, they do not represent the type of extreme deprivation required to find a violation under the Eighth Amendment. *See, e.g.*, *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (concluding that six-month exposure to human feces, vermin, unbearable heat, cold, inadequate food portions, and other conditions were not atypical enough to impose significant hardship). Plaintiff's allegations of his deprivation of cleaning supplies also do not rise to the level of a constitutional violation. *See McCrae*, 2025 WL 1220301, at *9 (collecting cases).

Plaintiff alleges multiple physical and emotional injuries resulting from his conditions of confinement. (Compl. at 16.) Even taking Plaintiff's allegations as true, these injuries did not amount to a sufficiently serious medical need that resulted from Defendant's actions, because they did not place defendant at risk of loss of life, permanent disability or the perpetuation of pain. *See Dale,* 2025 WL 755835, at *9 (citation omitted). There is no indication in the complaint that Defendants were aware of Plaintiff's alleged physical and emotional injuries, and Plaintiff does not allege any specific awareness on part of Defendants outside of his housing conditions. Nor did Plaintiff ever allege that he sought medical care for his injuries, or otherwise claim that he or those aware of his conditions perceived that he had a sufficiently serious medical need.

Even accepting all of Plaintiff's allegations as true, he has failed to allege that he was subjected to inhumane conditions, that Defendants inflicted unnecessary and wanton infliction of pain on him, that he suffered a sufficiently serious injury from his conditions of confinement, that those conditions were the result of Defendant's deliberate indifference to Plaintiff's health and safety, or that Plaintiff was ever placed at a substantial risk of harm. Accordingly, Plaintiff's conditions-of-confinement claim should be dismissed.

### **Plaintiff's excessive force claim is not dismissed.**

Plaintiff alleges that Vigus used excessive force against Plaintiff when, without provocation, Vigus first "verbally assault[ed]" and then pepper sprayed Plaintiff "undeservingly" in the face, who then "maliciously waited 15 minutes or more until Plaintiff was on verge of passing out to make the order for Plaintiff to be decontaminated" even though Plaintiff offered "no resistance at all." (Compl. at 14.) Defendants do not dispute this allegation. (*See generally* Docket Entries 10, 11.) A prisoner's allegation that prison officials deployed pepper spray on Plaintiff while he was docile is sufficient to state a claim for excessive force. *Brown v. Greeson*, No. 1:23CV877, 2024 WL 5146128, at *2 (M.D.N.C. Nov. 12, 2024) (recommending denial of motion to dismiss where Plaintiff alleged he was pepper sprayed in head and genitals "for no reason"), *report and recommendation adopted*, No. 1:23-CV-877, 2024 WL 5136634 (M.D.N.C. Dec. 17, 2024).

Thus, Plaintiff's allegations, taken as true, are sufficient to state a claim for excessive force in violation of the Eighth Amendment. *See Germain v. Gilpin*, No. TDC-18-0846, 2019 WL 1433019, at *6 (D. Md. Mar. 29, 2019). Because Defendants do not contest this allegation in their Motion to Dismiss, the undersigned recommends that said Motion be denied to the extent

17

it seeks to address Plaintiff's excessive-force claim against Vigus in his individual capacity, and that said claim should survive. *Accord Fox v. Wardy*, No. EP-04-CV-439-PRM, 2005 WL 1421514, at *4 (W.D. Tex. June 16, 2005) (unpublished) ("Defendants have failed to address this claim in their motion to dismiss. Thus, Defendant's Motion to Dismiss [as to said] claim must be denied."); *see also Spiehs v. Larsen*, 728 F. Supp. 3d 1190, 1213-14 (D. Kan. 2024) ("The Court need not engage in an analysis of this claim because Defendants fail to address the claim in their motion to dismiss. Though Defendants assert in their motion that they move to dismiss "all" of Plaintiff's claims, they did not offer specific argument in favor of dismissal of this claim. … The Court therefore declines to engage in a plausibility analysis of [said] claim.").

### Plaintiff's claims should be dismissed without prejudice.

Defendants argue that the official-capacity and conditions-of-confinement claims should be dismissed with prejudice. (Docket Entry 10 at 1.) Defendants cite no authority in support of their argument. "[A] court generally should permit a *pro se* litigant an opportunity to amend his complaint before dismissing it with prejudice." *Tompkins v. Herron*, No. 1:10-CV-978, 2012 WL 1077793, at *4 (M.D.N.C. Mar. 30, 2012) (unpublished) (citing *Moawad v. Childs*, 673 F.2d 850, 851-52 (5th Cir. 1982)), *aff'd*, 490 F. App'x 568 (4th Cir. 2012), *and aff'd*, 490 F. App'x 568 (4th Cir. 2012).[8] Here, Plaintiff has not sought an opportunity to amend his Complaint. Therefore, the undersigned recommends that Plaintiff's dismissed claims be dismissed without prejudice.

---

[8] Indeed, this Court has dismissed without prejudice comparable actions in which the defendants' motion to dismiss for failure to state a claim was granted. *McCrae*, 2025 WL 1220301, at *10-11; *see Burnett v. Office of Sherriff*, No. 1:22CV326, 2023 WL 4686875, at *4 (M.D.N.C. Jul. 21, 2023).

18

***Plaintiff is not entitled to injunctive relief.***

Plaintiff seeks an "[i]njunction that policy be enforced on living conditions, and anger management course be giving [sic] to[ ]Vigus." (Compl. at 16.) The Court construes this as a request for a preliminary injunction. *McClain v. Harris*, No. 5:17-CT-3026-FL, 2017 WL 6699129, at *2 (E.D.N.C. Nov. 2, 2017) (unpublished). Plaintiff has not established that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Further, courts do not involve themselves in the daily operations of prisons. *See Preast v. Cox*, 682 F.2d 292, 294 (4th Cir. 1980). Moreover, Plaintiff's requested injunctive relief is too vague to grant. *Ishee*, 726 F. Supp. 3d at 505. Thus, Plaintiff is not entitled to injunctive relief. *See, e.g.*, *Johnson v. Nevada Dep't of Corr.*, No. 221CV00308JADVCF, 2021 WL 5566758, at *7 (D. Nev. Nov. 29, 2021) (denying former inmate's motion for an injunction requiring Defendants to take anger-management classes); *Simmons v. Sharpe*, No. 5:10-CV-37-RJC, 2012 WL 4499045, at *1 (W.D.N.C. Sept. 28, 2012) (unpublished) (similar). Thus, the undersigned recommends that Defendants' Motion to Dismiss be granted as to the request for injunctive relief in the Complaint.

### III. <u>CONCLUSION</u>

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 10) should be **GRANTED** as to Plaintiff's request for injunctive relief, his official-capacity claims, and his conditions-of-confinement claim. Thus, the undersigned recommends that Defendant Jernigan should be **DISMISSED** from this action. These claims and this Defendant should be dismissed **without prejudice**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 10) should be otherwise **DENIED**. Thus, the undersigned recommends that Plaintiff's excessive-force claim against Defendant Vigus in his individual capacity should not be dismissed, and that Plaintiff should not be barred from proceeding *in forma pauperis* in this action.

                                              /s/ Joe L. Webster
                                           United States Magistrate Judge

May 30, 2025
Durham, North Carolina